UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| REBECCA TALLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-CV-7-RLW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant.[1] ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Rebecca Tallman ("Tallman") for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**I.     Background**

On December 27, 2018, Tallman applied disability benefits under Titles II and XVI. Tallman was born in 1969 and alleged disability beginning October 12, 2018 due to non-Hodgkin's lymphoma stage III, chronic obstructive pulmonary disorder ("COPD"), fibromyalgia, and nerve damage in her feet and memory loss from chemotherapy. On October 1, 2019, the ALJ issued a decision, finding Tallman was not disabled under Section 216(i) and 223 of the Social Security

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Act. (TR 8-26). The ALJ determined that Tallman retained the residual functional capacity ("RFC") to perform light work with occasional postural activities and environmental limitations. The Appeals Council of the Social Security Administration denied Tallman's request for review of the ALJ's decision (Tr. 1-5). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Tallman filed this appeal on February 11, 2020. (ECF No. 1). On July 6, 2020, Tallman filed a Brief in Support of her Complaint. (ECF No. 17). The Commissioner filed a Brief in Support of the Answer on August 6, 2020. (ECF No. 20).

## II.     Decision of the ALJ

The ALJ found that Plaintiff's severe impairments were follicular non-Hodgkin's lymphoma, bilateral peripheral neuropathy, COPD, nicotine dependance, and multi-level cervical spondylosis. (TR 13). The ALJ found that Tallman did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (TR 14). The ALJ limited Tallman to never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, perform overhead reaching, pushing, or pulling bilaterally. (TR 14). Relying on vocational expert testimony, the ALJ determined Tallman could perform light work after considering all of Tallman's symptoms and the extent to which these symptoms could reasonably be expected as consistent with objective medical evidence, medical opinions, and prior administrative findings. (TR 15). The ALJ found that Tallman's impairments would not preclude her from performing her past relevant work as an administrative clerk. (TR 20). In the alternative, the ALJ found that Tallman could perform other work that exists in significant numbers in the national economy, including work as a cafeteria

attendant, a sales attendant, and an electrical accessories assembler. (TR 20-21). Thus, the ALJ concluded Tallman was not disabled. (TR 22).

### III.    Legal Standard

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined

wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner

finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## IV. Discussion

### A. The ALJ Correctly Resolved Conflicting Medical Opinions

Tallman argues that the ALJ did not properly consider the conflicting medical opinions. Tallman argues that the ALJ is not a medical doctor and unable to make independent medical findings or to draw inferences from medical reports. (ECF No. 17 at 12 (citing *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009)).

Tallman claims that the ALJ did not properly consider Dr. Strasser's opinion evidence, particularly his April 2019 letter. (ECF No. 17 at 14; TR 18-19). In April 2019, Dr. Strasser wrote a letter, stating Tallman was his patient and that she would require medical visits every few months and chemotherapy intermittently as her disease progressed. (TR 458). Strasser indicated that Tallman had some symptoms of lymphoma that limited her ability to work generally, but did not provide any functional limitations. Tallman states that the ALJ incorrectly found that Tallman did not have problems with peripheral neuropathy and fatigue after the conclusion of her treatment. (ECF No. 17 at 14 (citing TR 19)). Tallman complains that the ALJ failed to review the record as a whole, which would have revealed that Tallman continued to complaint about neuropathy and fatigue. (ECF No. 17 at 14).

The Court, however, finds that the ALJ addressed Dr. Strasser's opinion, noting that Tallman's treatment findings and reports showed essentially normal functioning. Notably, in February 2019, Dr. Strasser found that Tallman's condition was stable. (TR 19, 443-44). Dr. Strasser found that Tallman's lymphoma did not require any treatment. (TR 19, 483). Tallman cited to no evidence that Tallman's lymphoma worsened between October 2018 and October 2019, the date of the ALJ's decision. Thus, the Court holds that Dr. Strasser's findings regarding possible

6

limitations based upon an assumption of future progression does not support a limitation on Tallman's ability to function during the relevant period.

Further, the Court holds that Dr. Strasser's opinion was not supported by the treatment records.  (TR 18-19). The ALJ found that Dr. Strasser's treatment notes did not identify any objective finding that support a finding of disability.  (TR 18-19). Prior to writing his letter, Dr. Strasser's treatment note stated Tallman was stable, without significant objective abnormalities. (TR 19, 443-44); 20 C.F.R. §§404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").  Following Dr. Strasser's letter, Tallman denied any headaches, dysphagia, nausea, vomiting, numbness, tingling, dizziness, anxiety, and night sweats. (TR 19, 485).  Dr. Strasser observed no musculoskeletal or neurological abnormalities. (TR 19, 485).  Thus, the Court holds that the ALJ properly found Dr. Strasser's opinions in his letter to be speculative and not supported by the record, including Dr. Strasser's own records.

The ALJ relied upon the Cancer Treatment Centers of America's evaluation of Tallman's ECOG performance status after her completion of her chemotherapy treatments.  Tallman's medical providers indicated that she was restricted in physically strenuous activity, but ambulatory and able to carry out light or sedentary work, such as office work.  (TR 16, 314, 326, 345, 364). Tallman argues that the ALJ improperly extrapolated that Tallman was able to perform office work based upon her medical providers' opinions that she could carry out light house or office work. (ECF No. 17 at 13).  The Court, however, notes that Tallman failed to demonstrate how the ALJ's determination was erroneous and holds that the ALJ's finding that Tallman was capable for performing office work was consistent with the limitations set by her medical providers.

7

Tallman further argues that the ALJ did not properly consider the opinions of Dr. Knorr, who had treated Tallman for more than 15 years. (ECF No. 17 at 14). Dr. Knorr provided opinions as part of his treatment notes for Tallman's March 5, 2019 appointment and in a Medical Source Statement completed on July 18, 2019. (TR 435, 519-21, 529-32). In his Medical Source Statement, Dr. Knorr opined that Tallman could lift less than 10 pounds on a frequent and occasional basis. She could sit and stand less than 2 hours during an 8-hour day. She could sit for 20 minutes before needing to change position; stand 10 minutes before alternating her position. She would need to walk around every 10 minutes in an 8-hour workday for five minutes at a time. She would need to shift from sitting or standing/walking at will and would need to lie down two to three times during an 8-hour workday. He indicated these limitations were due to Tallman's shoulder and neck pain, numbness and tingling, weakness in all extremities, shortness of breath, exacerbated by her anxiety, cancer and subsequent treatment and its side effects during peripheral neuropathy. (TR 529, 532). Dr. Knorr further opined Tallman could occasionally twist and climb stairs; she could never stoop/bend or crouch because she cannot get back up, and she should never climb ladders. Dr. Knorr stated Tallman could occasionally reach, handle, finger, feel, push/pull with upper and lower extremities. (TR 530). Dr. Knorr opined Tallman should avoid all exposure to extreme cold/heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners, and chemicals due to her COPD and her airways reacting to these causing worsening breathing problems. Dr. Knorr indicated Tallman had declined short-term memory, likely due to her cancer treatments. (TR 531). Dr. Knorr opined Tallman would miss work 4 days per month and be off task 25% or more during the workday. Dr. Knorr concluded Tallman would need unscheduled breaks every one to two hours for 10 minute due to muscle weakness, pain/paresthesia, numbness, and chronic fatigue. (TR 531-32). Dr. Knorr noted that Tallman

would be unable to sit for long periods of time without discomfort. (TR 521). In keeping with this restriction, Tallman notes that she was unable to sit through her entire hearing. (TR 77, 102). Tallman told her doctors on several occasions that she was fatigued and testified that she needed a 30 minute to four-hour nap daily due to her fatigue. (TR 99, 421, 358, 443, 482, 485). Tallman contends the ALJ improperly found that the restrictions listed on Dr. Knorr's Medical Source Statement were disproportionate to the level of treatment Tallman received. (ECF No. 17 at 17 (citing TR 19)). Tallman argues that the ALJ, who is not a physician, improperly made her own inferences from medical reports. (ECF No. 17 at 17).

The Court further finds that the ALJ properly evaluated Dr. Knorr's opinions and did not give weight to his opinion. (TR 19-20; ECF No. 17 at 14-16). Dr. Knorr observations and neurological findings were normal. (TR 19). 20 C.F.R. §§404.1520c(c)(2), 416.920c(c)(2). Dr. Knorr's treatment notes did not include abnormal objective findings to support his restrictions. (TR 412, 416, 425, 435-36, 527). The ALJ noted Tallman reported experiencing fatigue, but identified no objective findings to support a significant restriction due to her fatigue. (TR 19). The ALJ found no objective support in Dr. Knorr's or other providers' notes to support poor memory and concentration. (TR 19 (citing ECF No. 17 at 16-17)). Thus, the Court finds that the ALJ properly found Dr. Knorr's March 2019 opinion was not well supported or consistent with the evidence. (TR 19).

Likewise, the ALJ found no support in Dr. Knorr's proposed limitations in changing positions at will, lying down, absences from work and unscheduled breaks. (TR 19). The ALJ found the evidence supported some limitations in stooping, crouching, crawling, overhead reaching, operating foot controls, and exposure to pulmonary irritants, but the ALJ found that Dr. Knorr's proposed limitations were disproportionate to the record. (TR 19). For example, Dr.

9

Knorr's March 2019 examination noted that Tallman's fine motor skills were acceptable (TR 20, 435), which was inconsistent with the manipulative limitation Dr. Knorr proposed.  Similarly, Tallman denied any problems using her hands and reaching.  (TR 227, 237).  Tallman's medical records also showed Tallman exhibited full strength and no motor or sensory deficits (TR 359, 366, 372, 444, 485, 529), which was inconsistent with Dr. Knorr's suggestion that Tallman had numbness, tingling and weakness.   Dr. Knorr's treatment notes did not identify any significant abnormal objective findings to support the proposed limitations.  (TR 435-36, 527).  20 C.F.R. §§404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). In sum, the Court finds the ALJ correctly determined that Dr. Knorr's July 2019 medical opinion  was not supported by the record, including Dr. Knorr's own findings.  (TR 20).

In addition to the medical opinions, the Court holds that the ALJ properly evaluated Tallman's treatment (or lack of treatment) for her allegedly disabling impairments.  (TR 15-18). *See also* ECF No. 17 at 12, 17.  Tallman had undergone chemotherapy to treat non-Hodgkin's lymphoma, but completed treatment in March 2018, which was seven months prior to her alleged onset date.  (TR 15, 72, 343, 346, 447).  Following chemotherapy, Tallman underwent routine medical visits, including observation for cancer, but her condition remained stable with no additional cancer treatments.  (TR 16, 445, 483). Tallman claimed her pain and fatigue was caused by her chemotherapy, but her providers found her complaints "unrelated" to her cancer or treatment.  (TR 354, 367). The ALJ determined that Tallman's statements regarding the effects of her chemotherapy were inconsistent with the routine medical treatment: "Her overall course of

treatment contains few objective signs or clinical findings that support her alleged limitations. (TR 16). Against medical advice and as contraindicated for a disabling pulmonary impairment, Tallman continued to smoke. (TR 18, 370, 375, 448, 512, 525) Nevertheless, Tallman's respiratory complaints improved with treatment. (TR 16-17, 325, 329, 375). Tallman never sought treatment from a mental health specialist or a neurologist, despite her memory loss complaints. (TR 88, 96). The Court holds that Tallman's conservative treatment following her completion of chemotherapy and during the relevant period is inconsistent with her subjective allegations of disability. (TR 15-18). *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (*citing Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)) ("A pattern of conservative treatment may erode the reliability of debilitating complaints.").

In keeping with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the ALJ evaluated the medical evidence in assessing Tallman's allegations. (TR 14, 16-20). *See* 20 C.F.R. §§404.1529c(1)-(2), 416.929(c)(1)-(2).[2] Tallman testified she had hand numbness and tingling,

---

[2] 20 C.F.R. §404.1529(c) *Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work*—(1) *General.* When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider the medical opinions as explained in § 404.1520c. Paragraphs (c)(2) through (c)(4) of this section explain further how we evaluate the intensity and persistence of your symptoms and how we determine the extent to which your symptoms limit your capacity for work, when the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain.

(2) *Consideration of objective medical evidence.* Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those

but the physical examinations revealed full strength, intact sensation, and no neurological deficits. (TR 78, 359, 366, 372, 444, 483, 485). Tallman's physical examinations were unremarkable and free from significant abnormalities. (TR 16, 18-19, 359, 366, 426, 444, 448, 483, 485, 512-13). Tallman's lungs were clear with treatment, which was inconsistent with a disabling respiratory ailment. (TR 436, 444, 483, 485, 513). Although Tallman testified she suffered from frequent migraine headaches with vomiting and nausea, she denied such symptoms to her providers. (TR 16, 73-74, 80, 363, 444, 482, 485). The ALJ acknowledged that Tallman reported fatigue (TR 16, 18-19, 358, 363, 443, 482, 484), but noted that Tallman also denied fatigue. (TR 422, 447). Similarly, Tallman reported mild neuropathy on a few occasions (TR 16-17, 19, 356, 443), but Tallman claims her complaints require greater limitations. (ECF No. 17 at 13-14). The ALJ again acknowledged the discrepancies and resolved the conflicts in reaching a decision, finding the physical examinations did not support including greater limitations in the RFC finding.

The Court further holds that ALJ properly considered the objective testing performed on Tallman. (TR 14, 18). In February 2019, sacrum and coccyx x-rays showed mild degenerative changes at the sacroiliac joint and pubic symphysis, and slight hip changes. (TR 515). Rib x-rays revealed minimally displaced left eighth and ninth rib fractures and left lung atelectasis. (TR 14, 18, 517). May 2019 cervical x-rays showed multi-level cervical spondylosis with minimal to mild degenerative changes. (TR 17, 523). Tallman testified to left knee pain, but January 2018 x-rays

---

symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

were negative for any underlying cause. (TR 81, 335, 399). The ALJ considered the laboratory results and determined that they did not support Tallman's claims. (TR 14, 16-20).

Finally, the Court notes that the record indicates Tallman stopped working because of budget cuts at her employer. (TR 68). "Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)(finding the claimant did not lose his job because of his disability, he lost it because his position was eliminated); *Medhaug v. Astrue*, 578 F.3d 805, 816–17 (8th Cir. 2009) (discussing the relevance of plaintiff being laid off and claiming that date as also the alleged onset of disability). Tallman maintains she would have lost her job anyway, but she applied for and received unemployment benefits after she stopped working (TR 13, 69, 110, 204). Tallman's claim that she could not continue working due to her disability is contradicted by her application for unemployment benefits. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) ("In seeking and obtaining such unemployment benefits, Milam evinced a willingness and ability to work, which contradicts her claim of disabling pain."); *Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir.1991) ("A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold [her]self out as available, willing and able to work." (citation omitted)).

In sum, the Court holds that the ALJ properly evaluated Tallman's allegations of disability and found them not to be supported in record. (TR 13-20). The ALJ properly considered her physicians' medical opinions, the conservative medical treatment she received, and the objective clinical findings. Based upon the entire record, the Court holds that the ALJ properly determined Tallman's residual cancer effects limited her to light work with occasional postural activities and environmental limitations.

### B. Mental Impairments

Tallman contends that the ALJ improperly found no evidence to support restrictions on Tallman's mental functioning or need for frequent naps due to her cancer treatments. (ECF No. 17 at 13). Tallman asserted that the ALJ discounted her testimony that she had "chemo brain"—a common side effect of chemotherapy treatments (TR 96-97). Tallman reported to doctors that she required naps and rest breaks (TR 100, 358, 421, 443, 484). Tallman completed her chemotherapy in March 2018, but continued to complain of fatigue, neuropathy in both feet, trouble concentrating hip pain, dyspnea, neck pain, and night sweats. (TR 356, 358-59, 421, 443, 484-86). Regarding her mental status, Tallman mentions that she complained of having trouble concentrating on November 14, 2018. (TR 358). Tallman asserts that the ALJ cannot expect objective evidence because memory testing was never performed on her. (ECF No. 17 at 17).

Contrary to Tallman's contention (ECF No. 17 at 13, 16-17) the ALJ properly evaluated her mental health complaints. In March 2019, Steven Akeson, Psy.D., reviewed the medical records and found Tallman's mental impairments were not severe. (TR 118-19). Dr. Akeson evaluated Tallman's alleged memory loss as part of his determination. (TR 118). The ALJ considered Dr. Akeson's opinion and found it was consistent with the record. Likewise, the ALJ noted that Tallman's mental status examinations were normal at her appointments and no objective medical findings supported mental restrictions. Indeed, the records showed no objective evidence to support Tallman's claim of mental deficiencies. (TR 16, 19); (ECF No. 17 at 13).

To the extent that Plaintiff alleged some mental effects from pain and physical impairments due to her chemotherapy, the ALJ fully considered Tallman's pain and physical impairments in determining her RFC. (Tr. 19). The ALJ noted Tallman alleged she had poor short-term memory and concentration problems, but found that the objective findings of Dr. Knorr and other medical

14

providers did not support mental restrictions.  Tallman described anxiety once in 2017 when her son was leaving for the army (TR 411), but the ALJ noted Tallman's depression screenings were routinely normal.  (TR 19).  The Court holds that the ALJ's opinion regarding Tallman's mental health was based upon substantial evidence and affirms his finding that Tallman was not disabled.

### C. Past Relevant Work

Tallman argues that the ALJ improperly determined that Tallman could perform light work as defined by Social Security (i.e., being able to stand and walk for 6 hours out of an eight-hour workday) simply because her performance status evaluations November 2017 to November 2018 indicated Tallman could carry out light housework and office work.  (ECF No. 17 at 13 (citing TR 16)).  Tallman argued that the ALJ improperly found that the Tallman's testimony and "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in this decision.  (ECF No. 17 at 12 (citing TR 15-16)).  Tallman claims that the ALJ erroneously discounted the amount of work she had missed.  She claimed that she would have been fired due to her absences if she had not been let go due to budget cuts.  (TR 69).  Tallman testified that her cancer treatments had side effects including neuropathy in her feet, legs, and hands; short term memory loss; wide-spread pain; and fatigue.  (TR 70-71, 94, 98).

The Court holds that the ALJ properly determined that Tallman could perform her past relevant work.  The claimant bears the burden of showing that she is unable to perform her past relevant work. *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001).  "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Prosch v. Apfel,* 201 F.3d 1010, 1015 (8th Cir. 2000)).  The

15

hypothetical question must capture the concrete consequences of the claimant's deficiencies. *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir.1997). "Likewise the ALJ may exclude any alleged impairments that she has properly rejected as untrue or unsubstantiated." *Hunt v. Massanari*, 250 F.3d at 625 (citing *Long v. Chater,* 108 F.3d 185, 187 (8th Cir.1997)).

Here, the vocational expert responded to a hypothetical question, which incorporated the same limitations as the RFC, and testified that such an individual could perform Tallman's past relevant work as an administrative clerk. (TR 20, 104-05). The ALJ was required to compare the demands of Tallman's past work as an administrative clerk with Tallman's RFC to perform light work because such a comparison "is essential to a determination that she is capable of performing her past relevant work." *Young v. Astrue*, 702 F.3d 489, 492 (8th Cir. 2013) (citing *Kirby v. Sullivan,* 923 F.2d 1323, 1327 (8th Cir.1991)). The vocational expert indicated such a hypothetical person also could perform other work as a cafeteria attendant, a sales attendant, and an electrical accessories assembler. (TR 21, 105-60). The ALJ properly included limitations supported by the record and found that Tallman could perform her past relevant work, as well as several other jobs. Therefore, the Court finds ALJ adequately discharged her duty, and substantial evidence supports the ALJ's conclusion that Tallman was not disabled. *Young v. Astrue*, 702 F.3d 489, 492 (8th Cir. 2013).

### V. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

Dated this 7th day of September, 2021.

                                        RONNIE L. WHITE
                                        UNITED STATES DISTRICT JUDGE